1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BERNARD L. SMITH,                    No.  2:12-cv-00024 AC P

12              Plaintiff,

13        v.                              ORDER AND FINDINGS AND
                                          RECOMMENDATIONS
14   CALIFORNIA STATE PRISON
     SACRAMENTO, et al.,

15

16              Defendants.

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local Rule

19   302 pursuant to 28 U.S.C. § 636(b)(1).  Presently before the court are defendants' motion for

20   summary judgment, ECF No. 34,  plaintiff's motion for costs, ECF No. 35, and plaintiff's motion

21   for a temporary restraining order, ECF No. 40.  Each motion will be addressed in turn.

22   I.    Allegations in the First Amended Complaint

23        Plaintiff is currently confined at Mule Creek State Prison.  However, the claims in the

24   present action arise from his incarceration at California State Prison-Sacramento ("CSP-Sac")

25   during 2009 and 2010.

26        At the screening stage, the court found that the verified first amended complaint set forth a

27   colorable Eighth Amendment claim against Defendants Harvey, Baker, Woods, Maserut, and

28   Mini for failing to protect plaintiff from physical harm on February 24, 2009 when he was

1

1   stabbed multiple times by his cell mate.  See ECF Nos. 14 at 4- 8, 17 at 2.  Count two alleged that

2   Defendant Bal violated plaintiff's Eighth Amendment right to adequate medical care for denying

3   plaintiff "necessary diets, chairs, shoes, lotions, soaps, and medical marijuana."  See ECF Nos. 14

4   at 9, 17 at 2.  In count three, plaintiff alleged that Defendant Mini violated plaintiff's right to

5   procedural due process when he interfered with an investigation ordered by the warden into

6   plaintiff's safety concerns.  ECF Nos. 14 at 12, 17 at 2.

7   II.      Defendants' Motion to Dismiss

8        On September 26, 2013 defendants filed a motion for judgment on the pleadings and/or

9   summary judgment.  Included in that motion was a separate and distinct motion to dismiss

10  pursuant to Rule 12(b) on the unenumerated ground that plaintiff had failed to exhaust his

11  administrative remedies prior to filing his § 1983 lawsuit.  ECF No. 34-3 at 7.  Defendants also

12  filed a warning pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003),

13  informing plaintiff of how to oppose dismissal.  See ECF No. 34-1.

14       On April 3, 2014, the Ninth Circuit overruled Wyatt and held that the defense of failure to

15  exhaust administrative remedies under 42 U.S.C. § 1997e(a) should in most cases be presented in

16  a motion for summary judgment rather than a motion to dismiss under unenumerated Rule 12(b).

17  Albino v. Baca, No. 10-55702, 2014 WL 1317141 (9th Cir. Apr. 3, 2014) (en banc).  The Ninth

18  Circuit's decision in Albino makes clear that it is only the rare case in which non-exhaustion will

19  be obvious from the face of the complaint.  Albino, 2014 WL 1317141 at *11-12.  What is clear

20  from the present record is that the exhaustion question involves disputed issues of fact that are

21  therefore not appropriate for resolution in an unenumerated 12(b) motion.  See Albino, 2014 WL

22  1317141 at *12.

23       Because defendants have moved for dismissal of the amended complaint as

24  administratively unexhausted pursuant to Rule 12(b), and have not complied with the

25  requirements of Rule 56, the court will recommend denying the motion without prejudice in light

26  of the Albino decision.

27  III.     Defendants' Request for Judicial Notice

28       Defendants request this court to take judicial notice of the civil docket, original complaint,

2

1   the findings and recommendations, and the final order dismissing plaintiff's prior civil case

2   raising the same allegations as those herein.  ECF No. 34-4, see Smith v. California State Prison-

3   Sacramento, 2:10-cv-00766-KJM-DAD.  While these court documents do not assist the court in

4   resolving defendants' current motion to dismiss for failing to exhaust administrative remedies, the

5   exhibits attached to the original complaint are still relevant in determining the pending summary

6   judgment motion.  For this reason, the Court grants defendants' request.  See Johnson v. City of

7   Pleasanton, 982 F.2d 350, 352 (9th Cir. 1992) (citing Beech Aircraft Corp. v. Rainey, 488 U.S.

8   153, 162 (1988)).

9   IV.    Defendants' Motion for Summary Judgment[1]

10          With respect to count one of the amended complaint, Defendants Mini, Woods, Harvey,

11   Masuret, and Baker assert that they are entitled to judgment on the pleadings and/or summary

12   judgment because they were unaware of any information that would have led them to believe that

13   plaintiff was in danger of an attack by his cell mate.  ECF No. 34-3 at 11.  Defendant Bal

14   contends that summary judgment is appropriate on count two because he: 1) did not know of or

15   intentionally disregard any serious risk to the plaintiff's health; 2) his actions did not cause

16   plaintiff any harm or unnecessary pain; and, 3) he did not have a sufficiently culpable mental state

17   to establish deliberate indifference.  Id. at 14.  Moreover, the evidence demonstrates that Dr. Bal

18   had no personal involvement in plaintiff's medical treatment, medication distribution, or single

19   cell status.  Id. at 14-15.  Finally, Defendant Mini asserts that plaintiff has failed to state a claim

20   of a procedural due process violation in count three because there was no atypical and significant

21   hardship placed on plaintiff in relation to the ordinary incidents of prison life.  ECF No. 34-3 at

22   15 (citing Wilkinson v. Austin, 549 U.S. 209, 223 (2005)).

23   V.    Plaintiff's Opposition to Summary Judgment.

24          At the outset, the court notes the deficiencies in plaintiff's opposition to summary

25   judgment.  First and foremost, plaintiff presents his opposition to summary judgment in question

26

27   [1] Plaintiff was afforded contemporaneous notice of his obligations in opposing summary
     judgment pursuant to Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).  See
28   ECF No. 34-2.

format.  He identifies the material issues of fact as follows: "Who is responsible for the plaintiff's safety as well as the safety of the prisons?  What does it mean when a Warden declares an inmate ADA?  Who is responsible to insure the plaintiff receives due process on an investigation ordered by the Warden?  Who has the authority to change or alter a medical program on an entire prison population?"  ECF No. 38 at 3-4.  Summary judgment is not the stage to discover the proper parties to sue.  The discovery period has closed and the only remaining question is whether there is a triable issue of material fact.

Plaintiff also failed to reproduce defendant's itemized facts and admit or deny each one, which makes the court's job more arduous.  See E.D. Cal. L. R. 260(b).  Local Rule 260(b) states that any party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  E.D. Cal. L.R. 260(b).  Rather than complying with Local Rule 260(b), plaintiff submits five exhibits and labels each with the name of the defendant to whom it applies.  See ECF No, 38 at 5-25.  Such non-compliance with the Local Rule forces the court to engage in a search for the proverbial "needle in the haystack" or, in this case, the disputed material fact that will save plaintiff's claims from summary judgment.  Due to these deficiencies in the opposition, the court has considered plaintiff's verified first amended complaint as a supporting affidavit for purposes of summary judgment to the extent that it is "based on personal knowledge and set[s] forth specific facts admissible in evidence."  Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (citations omitted).

On the same date that his opposition to the summary judgment motion was filed, plaintiff also submitted a "Demand for a Jury Trial."  ECF No. 39.  Plaintiff attached a January 3, 2008 Institutional Classification Committee report recommending his transfer to CSP-SAC despite plaintiff's statement that he does have enemies at that institution.  See ECF No. 39 at 2.  Although not in proper form, the court will consider this as additional evidence tendered in opposition to summary judgment.

The court also notes that in his introductory remarks, plaintiff indicates that "he never received any information from this Court since June 2013.  The plaintiff filed a motion to compel for discovery on July 8, 2013 and never heard any ruling."  ECF No. 38 at 1.  However, a review of the court's docket since June 2013 indicates that proper service of the court's orders was made on plaintiff's address of record, and no document has been returned to sender.  Furthermore, no motion to compel discovery was ever filed.  Since plaintiff failed to provide a copy of the purported discovery motion or even a copy of his prison mail log from July 2013, this court will not rule on issues that are not before it.[2]

VI.     Undisputed Material Facts

Plaintiff is a California prison inmate diagnosed with HIV who was incarcerated at California State Prison– Sacramento (CSP-SAC) at all times relevant to the instant proceedings.  ECF No. 14 at 4.  The Classification Committee at the prison determines whether an inmate's case warrants single cell status.  ECF Nos. 34-12 at ¶ 4, 34-8 at ¶ 7.  Plaintiff was denied a single-cell, but he was often celled alone and refused to house with other inmates.  ECF Nos. 34-8 at ¶ 3, 34-9 at ¶ 4, 34-11 at 4.  Because plaintiff was not designated as a single-cell inmate, he was required to find a compatible cell mate.  ECF No. 34-8 at ¶ 5.

In 2009, Defendant Baker was the Correctional Sergeant on "B" Facility at CSP-SAC.  In this capacity, he was responsible for assigning inmates to cells and reviewing inmate cell moves.  ECF No. 34-8 at ¶ 2.  On February 17, 2009, Defendants Harvey and Baker informed plaintiff that he would have to accept a cell mate or go to administrative segregation.  ECF No. 14 at 4.  Plaintiff decided to accept a cell mate.  Id.  Eight days later, plaintiff was stabbed multiple

---

[2] Even liberally construing plaintiff's allegations as a motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, plaintiff failed to demonstrate that a ruling on the summary judgment motion should be deferred or further discovery provided.  As the Ninth Circuit stated in Continental Maritime v. Pacific Coast Metal Trades, 817 F.2d 1391, 1395 (9th Cir. 1987), under former Rule 56(f) "the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact."  Id.  Plaintiff has not met this burden.  Plaintiff fails to demonstrate how "additional discovery would have revealed specific facts precluding summary judgment."  See Tatum v. X City and County of S.F., 441 F.3d 1090, 1101 (9th Cir. 2006).  The requested discovery is sought without explanation of what specific, material facts these documents will likely disclose.  Therefore, the court declines to re-open the discovery period or to defer consideration of the pending summary judgment motion.

times by cellmate Simmons.  Id. at 5; see also ECF No. 34-4 at 32-37 (medical treatment records).

Before inmates are assigned to become cell mates, their central files are reviewed to ensure compatibility and lack of enemy concerns.  ECF Nos. 34-12 at ¶ 7, 34-8 at ¶ 5.  Inmate Simmons's central file did not contain any information to suggest inmate Simmons was a danger to inmate Smith or inmates in general, as his file was void of evidence of violence against inmates before February 25, 2009.  ECF No. 34-10 at ¶ 3.  Inmates always have the opportunity to voice a concern regarding fears of danger of their cell mate.  ECF No. 34-8 at ¶ 5.  Plaintiff did not state he was in fear for his life or safety when he was celled with inmate Simmons.  ECF Nos. 34-12 at ¶ 6, 34-8 at ¶ 8.  None of the Defendants had any knowledge or information that inmate Simmons was a danger to Plaintiff before February 25, 2009.  ECF Nos. 34-8 at ¶ 8, 34-9 at ¶ 4, 34-12 at ¶ 7, 34-5 at 6-8 (plaintiff's deposition).

On January 11, 2010 plaintiff was once again given the option of accepting a cell mate or going to administrative segregation.  ECF Nos. 14 at 12, 34-4 at 43.  This time, plaintiff was placed in administrative segregation because he complained to Defendant Baker that he could not keep a cell mate due to safety concerns.  ECF Nos. 34-9 at ¶ 6, 34-4 at 43.  On January 13, 2010 plaintiff appeared before an initial classification committee which ordered a 60 day administrative segregation stay and an investigation to be completed into plaintiff's safety concerns.  ECF No. 14 at 12.

An investigation was conducted regarding plaintiff's safety concerns by Correctional Officer Karelas.  ECF No. 34-9 at ¶ 6.  Officer Karelas interviewed Plaintiff, reviewed his file, and concluded that Plaintiff "was attempting to use his health issues as a tool to navigate where he feels he should be housed and that he does not have any documented enemies on 'B' Facility." ECF No. 34-9 at ¶ 6.  Plaintiff admitted he did not have any enemies on "B" Facility and Officer Karelas recommended that he be evaluated to return to "B" Facility.  ECF No. 34-9 at ¶ 6. Defendant Mini did not interfere with Officer Karelas' investigation.  Id.

On February 10, 2010, the Institutional Classification Committee, of which Defendant Mini was a member, cleared plaintiff for release from ad-seg to return to general population. ECF No. 34-4 at 44.  Plaintiff was also denied single cell status.  Id.  However, plaintiff refused to

6

1    leave Ad-Seg.  Id.  When staff attempted to complete plaintiff's release from ad-seg, he once

2    again refused to leave and was issued a Rules Violation Report for refusing his assigned housing

3    on February 18, 2010.  ECF Nos. 34-9 at ¶ 6, 38 at 11.

4           Defendant Dr. Bal was the Chief Medical Officer at CSP-SAC.  ECF No. 34-11 at

5    ¶ 1.  Dr. Bal has never treated or met the Plaintiff.  ECF Nos. 34-11 at  ¶ 3, 34-5 at 9.  Dr. Bal was

6    not responsible for signing off on single-cell chronos and did not deny Plaintiff's single-cell

7    chrono.  ECF No. 34-11 at ¶ 4, 4.  Dr. Bal did not make policy decisions regarding classifying

8    medications as formulary or non-formulary or distributions of medications.  ECF Nos. 34-11 at ¶

9    5, 38 at 9.  Dr. Bal was not involved in Plaintiff's request to be given medical marijuana.  Id. at ¶

10   6.

11   VII.   Disputed Facts

12          According to plaintiff, Defendant Baker told the plaintiff on February 25, 2009 that he

13   knew plaintiff's former cell-mate was an "asshole" and nobody wanted to be double celled with

14   him because he was already in court for stabbing someone at another prison.  ECF No. 14 at 7.

15          Defendant Baker denies informing plaintiff that inmate Simmons was an "asshole" or that

16   he was violent. ECF No. 34-8 at ¶ 6.  Defendant Baker would never disclose another inmate's

17   history to an inmate.  Id.

18          Plaintiff also disputes the dates on which Officer Karelas' investigation into plaintiff's

19   safety concerns were initiated and completed.  According to plaintiff, Defendant Mini informed

20   the classification committee that the investigation into plaintiff's safety concerns was complete on

21   February 10, 2010 and that it was unfounded, even though this was a lie.  ECF No. 14 at 12.

22   Plaintiff contends that Officer Karelas did not even start his investigation until February 12, 2010.

23   ECF No. 14 at 12.

24          Plaintiff disputes the "flat out lie" that he "never told any of the defendants that he feared

25   for his safety."  He cites to a number of prison chronos and grievances, most of which post-date

26   the stabbing, without specifying where in the record they can be found.  ECF No. 38 at 3.

27   VIII.   Legal Standards Governing Summary Judgment Under Rule 56

28          Summary judgment is appropriate when the moving party "shows that there is no genuine

7

1  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

2  Civ. P. 56(a).

3       Under summary judgment practice, the moving party "initially bears the burden of

4  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

5  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

6  The moving party may accomplish this by "citing to particular parts of materials in the record,

7  including depositions, documents, electronically stored information, affidavits or declarations,

8  stipulations (including those made for purposes of the motion only), admissions, interrogatory

9  answers, or other materials" or by showing that such materials "do not establish the absence or

10  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

11  support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

12  of proof at trial, "the moving party need only prove that there is an absence of evidence to support

13  the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.);

14  see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

15  adequate time for discovery and upon motion, against a party who fails to make a showing

16  sufficient to establish the existence of an element essential to that party's case, and on which that

17  party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure

18  of proof concerning an essential element of the nonmoving party's case necessarily renders all

19  other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

20  long as whatever is before the district court demonstrates that the standard for entry of summary

21  judgment, . . ., is satisfied."  Id. at 323.

22       If the moving party meets its initial responsibility, the burden then shifts to the opposing

23  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

24  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

25  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

26  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

27  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

28  Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the

1   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

2   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

3   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

4   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

5   party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

6          In the endeavor to establish the existence of a factual dispute, the opposing party need not

7   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

8   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

9   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

10  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

11  Matsushita, 475 U.S. at 587 (citations omitted).

12         "In evaluating the evidence to determine whether there is a genuine issue of fact," the

13  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

14  party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

15  the opposing party's obligation to produce facts to support an inference.  See Richards v. Nielsen

16  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

17  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

18  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

19  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

20  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

21         On December 21, 2012, the court advised plaintiff of the requirements for opposing a

22  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

23  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

24  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

25  IX.    Legal Standards for Judgment on the Pleadings Pursuant to Rule 12(c)

26         Rule 12(c) of the Federal Rules of Civil Procedure provides that,

27              [a]fter the pleadings are closed but within such time as not to delay
                the trial, any party may move for judgment on the pleadings.  If, on
28              a motion for judgment on the pleadings, matters outside the

9

1
2
3

> pleadings are presented to and not excluded by the court, the
> motion shall be treated as one for summary judgment and disposed
> of as provided in Rule 56, and all parties shall be given reasonable
> opportunity to present all material made pertinent to such a motion
> by Rule 56.

4

5   Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate "when there are no issues of

6   material fact, and the moving party is entitled to judgment as a matter of law."  3550 Stevens

7   Creek Assocs. v. Barclays Bank, 915 F.2d 1355, 1357 (9th Cir. 1990).  In considering a motion

8   for judgment on the pleadings, the court reviews the pleadings only.[3]  The allegations of the non-

9   moving party must be accepted as true.  See Hal Roach Studios, Inc. v. Richard Feiner and Co.,

10  896 F.2d 1542, 1550 (9th Cir. 1989).  The burden is on the moving party to demonstrate that no

11  material issue of fact remains to be resolved and that the moving party is entitled to judgment as a

12  matter of law.  Id.

13  X.      Legal Standard Governing Eighth Amendment Claim

14          The Civil Rights Act under which plaintiff is proceeding provides that

15
16
17

> [e]very person who, under color of [state law] ... subjects, or causes
> to be subjected, any citizen of the United States ... to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution ... shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

18  42 U.S.C. § 1983.  The statute requires an actual connection or link between the actions of each

19  defendant and the deprivation alleged to have been suffered by the plaintiff.  See Monell v.

20  Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

21  person 'subjects' another to the deprivation of a constitutional right, within the meaning of

22  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform

23  an act which he is legally required to do that causes the deprivation of which complaint is made."

24  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

25          Supervisory personnel are customarily not liable under § 1983 for the actions of their

26  employees under a theory of respondeat superior.  Thus, when a named defendant holds a

27

28  [3] Exhibits appended to a complaint are considered a part thereof for all purposes.  Fed. R. Civ. P.
    10(c).

10

1    supervisorial position, the causal link between him and the claimed constitutional violation must

2    be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

3    Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  "Supervisors can be held liable for: (1) their own

4    culpable action or inaction in the training, supervision, or control of subordinates; (2) their

5    acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct

6    that showed a reckless or callous indifference to the rights of others."  Cunningham v. Gates, 229

7    F.3d 1271, 1292 (9th Cir. 2000) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.

8    1991)).  Accordingly, to establish liability, plaintiff must offer specific facts to satisfy one of the

9    prongs.  Vague and conclusory allegations concerning an official's involvement in civil rights

10   violations are not sufficient.  See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

11       An inmate's health and safety are conditions of confinement subject to the strictures of the

12   Eighth Amendment.  Wilson, 501 U.S. at 303.  An injury to a prisoner's health or safety

13   "translates into constitutional liability" for the prison officials responsible for a prisoner's safety

14   when the deprivation suffered is sufficiently serious and each official had a sufficiently culpable

15   state of mind in causing or allowing the deprivation to occur.  Farmer, 511 U.S. at 834.  Where a

16   prisoner alleges failure to prevent harm, he or she satisfies the "sufficiently serious" requirement

17   by proving the existence of conditions posing a substantial risk of serious harm.  Id. at 834; see

18   also Helling v. McKinney, 509 U.S. 25, 33-34 (1993).  However, a prison official has a

19   sufficiently culpable mind only where "the official knows of and disregards an excessive risk to

20   inmate health or safety."  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts

21   from which the inference could be drawn that a substantial risk of serious harm exists, and he

22   must also draw the inference."  Id.  Whether a prison official had the requisite knowledge of a

23   substantial risk is a question of fact.  Id. at 842.  "[P]rison officials who actually knew of a

24   substantial risk to inmate health or safety may be found free from liability if they responded

25   reasonably to the risk, even if the harm ultimately was not averted."  Id. at  844.

26   XI.    Analysis of Count One

27       Regarding plaintiff's initial claim that Defendants Harvey, Baker, Woods, Maserut, and

28   Mini failed to protect him from an assault by his cell mate on February 25, 2009, the defendants

1    have satisfied their burden of demonstrating the absence of evidence to support the claim.  Upon

2    consideration of the portions of the record cited in support of the summary judgment motion, the

3    court finds no evidence supporting the subjective component of plaintiff's Eighth Amendment

4    claim.  Defendants Harvey, Baker, Woods, Maserut, and Mini did not know of a substantial risk

5    of serious harm to plaintiff's safety prior to his assault.  Moreover, defendants had no information

6    which would have supported an inference that there was a substantial risk of harm to plaintiff,

7    because inmate Simmons' prison central file did not contain any prior incident of violence

8    towards other inmates.  See Farmer, 511 U.S. at 837.

9          The defendants having met their initial responsibility, the burden shifts to plaintiff to

10   establish the existence of genuine issues of material fact requiring a trial.  As the party who will

11   bear the burden of proof at trial, plaintiff may not rely on the allegations of his amended

12   complaint or on mere argument but must provide evidence that demonstrates the existence of

13   genuine issues as to material facts.  In his complaint, plaintiff alleged that defendant Baker told

14   him on February 25, 2009 that he knew inmate Simmons was an "asshole" and that nobody

15   wanted to be double celled with Simmons because he had stabbed someone at another prison.[4]

16   Baker denies having made this statement.  ECF No. 34-8 at ¶ 6.  The dispute about whether Baker

17   in fact made this statement does not defeat summary judgment, because no reasonable jury could

18   believe plaintiff's account in light of the fact that Simmons' prison records do not reflect any such

19   prior stabbing.  See ECF No. 34-10 at ¶ 3.  "When opposing parties tell two different stories, one

20   of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

21   court should not adopt that version of events for purposes of ruling on a summary judgment

22   motion."  Scott v. Harris, 550 U.S. 372, 380 (2007).

23         Plaintiff argues further that various classification chronos and prison grievances reflect his

24   expressed concern for his safety.  ECF No. 38 at 3.  Most of these documents post-date the

25   stabbing and are therefore immaterial to the failure to protect issue.  Plaintiff's exhibits

26   _____

27   [4] The court treats this allegation if it were contained in a supporting affidavit, as plaintiff claims
     to be a percipient witness to a statement that the court will assume for present purposes to be an
     admission that would be admissible against Baker at trial.  See Schroeder v. McDonald, 55 F.3d

28   at 460.

12

1    demonstrate that prior to the stabbing he objected to having a cell mate due to health and safety

2    concerns primarily related to his HIV status.  None of the expressed "safety" concerns were

3    specific to inmate Simmons or reflect information that would have put defendants on notice of a

4    specific threat to plaintiff's safety.  See ECF No. 38 at 5-18.  Having reviewed all the exhibits to

5    the complaint as well as those provided in support of opposition to the motion, the undersigned

6    finds no evidentiary support for plaintiff's claim.

7         In the absence of any evidence that defendants knew of and disregarded an excessive risk

8    to plaintiff's safety on February 25, 2009, the undersigned finds that no rational trier of fact could

9    find that defendants had a sufficiently culpable state of mind.  Plaintiff's complete failure of proof

10   concerning the subjective element of his claim renders all other facts, as well as any disputes

11   concerning those facts, immaterial.  Therefore, summary judgment should be entered for

12   Defendants Harvey, Baker, Woods, Maserut, Mini and Bal.

13   XII.   Analysis of Count Two

14        No evidence links the actions of defendant Bal to the alleged violation of plaintiff's

15   Eighth Amendment right to adequate medical care.  As the Chief Medical Officer at CSP-SAC,

16   Dr. Bal was not responsible for treating inmate patients.  Even plaintiff agreed in his deposition

17   that Dr. Bal never treated him for any of his medical conditions.  There simply is no evidence

18   linking Dr. Bal to the denial of plaintiff's single cell chrono, the decision to classify certain

19   medications as formulary or non-formulary, or the denial of a necessary diet, chair, shoes, lotions,

20   soaps, and medical marijuana.  Put simply, plaintiff has sued the wrong individual.  The

21   undisputed material facts demonstrate that Defendant Bal had no personal participation in the

22   daily decisions governing plaintiff's medical treatment.  See Johnson v. Duffy, 588 F.2d 740,

23   743-44 (9th Cir. 1978) (stating that § 1983 liability can be established not only by "some kind of

24   direct personal participation in the deprivation, but also by setting in motion a series of acts by

25   others which the actor knows or reasonably should know would cause others to inflict the

26   constitutional injury.")  For this reason, the undersigned recommends granting the summary

27   judgment motion as to Defendant Bal.

28   ////

1    XIII.    Legal Standards Governing a Due Process Violation

2           Count three alleges that Defendant Mini violated procedural due process when he

3    interfered with an investigation into plaintiff's safety concerns in 2010 when he went into

4    administrative segregation rather than be double-celled again.  Procedural due process questions

5    are examined in two steps.  First, the court must determine whether the plaintiff was deprived of a

6    protected property or liberty interest.  Board of Regents of State Colleges v. Roth, 408 U.S. 564,

7    570–72 (1972).  The Supreme Court has held that "the Constitution does not give rise to a liberty

8    interest in avoiding transfer to more adverse conditions of confinement."  Id. at 222 (citing

9    Meachum v. Fano, 427 U.S. 215, 225 (1976)).  However, the Court also has held that "a liberty

10   interest in avoiding particular conditions of confinement may arise from state policies or

11   regulations, subject to the important limitations set forth in Sandin v. Conner, 515 U.S. 472

12   (1995)."  Id.  Such interests generally are limited to "freedom from restraint which ... imposes

13   atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

14   Sandin, 515 U.S. at 484.

15          Second, if the court finds a deprivation of a protected interest, it must then decide whether

16   the employed procedures were constitutionally sufficient.  Hewitt v. Helms, 459 U.S. 460, 472

17   (1983).  What process is due is a question of law.  Quick v. Jones, 754 F.2d 1521, 1523 (1984).

18   While a state may erect certain procedural barriers triggering the right to adjudication without

19   violating the Due Process Clause, "the Fourteenth Amendment does require ... an opportunity ...

20   granted at a meaningful time and in a meaningful manner, for a hearing appropriate to the nature

21   of the case."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1981); see Boddie v.

22   Connecticut, 401 U.S. 371, 378 (1971); Armstrong v. Manzo, 380 U.S. 545, 552 (1965); Mullane

23   v. Central Hanover Tr. Co., 339 U.S. 306, 313 (1950).  However, even if a due process violation

24   resulting from a prison policy occurs, the prison policy is valid so long as it is "reasonably related

25   to legitimate penological interests."  Turner v. Safely, 482 U.S. 78, 89 (1987).

26          Additionally, a provision that merely provides procedural requirements, even if

27   mandatory, cannot form the basis of a constitutionally cognizable liberty interest.  See Smith v.

28   Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see also Antonelli v. Sheahan, 81 F.3d 1422,1430

                                                    14

1    (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected

2    liberty interest requiring procedural protections of Due Process Clause).

3    XIV.    Analysis of Count Three

4          It is not entirely clear whether plaintiff's due process claim is based on the February 10,

5    2010 decision by the Institutional Classification Committee to return plaintiff to the general

6    population, the results of the investigation into plaintiff's safety concerns which did not find

7    documented evidence of any threat to plaintiff in the general population, or the subsequent Rules

8    Violation Reports and Segregated Housing term that plaintiff received as a result of his refusal to

9    return to the general population.  See ECF Nos. 14 at 12-15, 34-4 at 44.  The court notes that

10   Defendant Mini was involved only in the ICC decision and not in the safety investigation or the

11   subsequent disciplinary hearing.  Officer Karelas conducted the investigation and Lt. Johnson

12   conducted the disciplinary hearing, and plaintiff is proceeding against neither of them.  ECF No.

13   17 at 2.

14         Defendant Mini has established the complete failure of proof as to the existence of a due

15   process violation related to any of these matters.  Regarding the ICC's decision to return plaintiff

16   to the general population, the only disputed fact concerns the dates that the safety investigation,

17   upon which the committee relied in making its decision, commenced and ended.  Plaintiff alleged

18   in his amended complaint that Officer Karelas had either not commenced or not completed his

19   investigation by the time of the ICC hearing.  Compare ECF No. 14 at 12 (indicating that the

20   investigation had not even started by 2-10-10) with ECF No. 14 at 14 (indicating that the

21   investigation was completed on 2-13-10).  The dates of the investigation would only be a material

22   issue if plaintiff could establish that additional information became available after February 10,

23   2010 that would have changed the outcome of the investigation.  However, plaintiff has not

24   produced any evidence to support the allegations in his amended complaint regarding the ICC

25   decision, much less connected them to a cognizable procedural due process violation.

26         Plaintiff's mere disagreement with the results of the safety investigation does not

27   implicate procedural due process, much less demonstrate a genuine issue of material dispute

28   warranting a trial on this claim.  Defendant Mini was not alleged nor demonstrated to have any

1  role in the investigation itself.  To the extent plaintiff alleged that Defendant Mini interfered in

2  the investigation, the allegation is entirely unsupported by evidence.  Accordingly, Defendant

3  Mini is entitled to judgment as a matter of law.

4       There is no evidence that Defendant Mini had any personal involvement in the

5  disciplinary proceedings that ensued from plaintiff's persistence in refusing a cell mate.  See

6  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Nor has plaintiff identified any procedural

7  due process violations related to the disciplinary hearing.[5]  Plaintiff argues that had it not been for

8  the February 10, 2010 classification committee decision he would not have received "three

9  disciplinary infractions, suspension of [his] privileges, and a SHU term."  This theory fails to link

10  Defendant Mini to any violation of due process.

11       For all these reasons, Defendant Mini is entitled to summary judgment on this claim.

12  XV.   Ancillary Motions

13      A.   Plaintiff's Motion for Costs and Fees

14       On October 2, 2013, plaintiff filed a motion for payment of costs and fees pursuant to

15  Rule 54(d)(1) of the Federal Rules of Civil Procedure.  ECF No. 35.  In his motion plaintiff

16  requests reimbursement in the amount of $500 to cover the legal filings, legal copies and fees that

17  he has had to pay to litigate this case.  Id. at 2.  He indicates that he will seek reimbursement for

18  additional costs and fees once he prevails in the instant civil action.

19       Plaintiff's motion for costs is premature.  It is generally understood that "the appropriate

20  time for taxing costs is after a decision has been reached in the action."  10 Wright, Miller &

21  Kane, Federal Practice and Procedure § 2679 at 482 (3d ed.1998).  Rule 54 of the Federal Rules

22  of Civil Procedure applies once final judgment has been entered as to any claim or claims.

23  Accordingly, the court will recommend denying the motion as premature.

24  ////

25

26  [5] The process due in a prison disciplinary proceeding consists of notice of the charges, disclosure of evidence, an opportunity to be heard, an opportunity to call witnesses and present evidence

27  (subject to certain limitations), assistance if the inmate is illiterate or disabled, and a written statement of the reasons for the decision.  See Wolff v. McDonnell, 418 U.S. 539 (1974);

28  Edwards v. Balisok, 520 U.S. 641 (1997).

1        B.        Plaintiff's Motion for a Temporary Restraining Order

2              While defendants' summary judgment motion was pending, plaintiff filed a request for a

3     temporary restraining order.  ECF No. 40.  Plaintiff seeks injunctive relief against individuals at

4     Mule Creek State Prison who are not named as defendants in this action.  Plaintiff indicates that

5     on May 15, 2014 his single cell status was removed.  Id. at 3.  He also complains in his motion

6     about a health care appeal from May 16, 2014 concerning his pain management treatment.  Id.

7     He seeks an injunction requiring Mule Creek State Prison to grant him single cell status as well as

8     to increase in his pain medication, Gabapentin, from twice a day to three times a day.  Id.

9              This court's order of June 13, 2013 explained to plaintiff that his "current prison is not a

10    defendant in this action, nor are any officials working at it."  ECF No. 31 at 2.  The allegations in

11    the temporary restraining order concern officials at Mule Creek State Prison who are not parties

12    to the present action.  Furthermore, this court lacks jurisdiction to issue orders directing the

13    behavior of non-defendants in another district.  See Zenith Radio Corp. v. Hazeltine Research,

14    Inc., 395 U.S. 100, 112 (1969).  For all these reasons, the undersigned recommends denying the

15    motion.

16            IT IS HEREBY ORDERED that the Clerk of Court randomly assign this case to a district

17    court judge.[6]

18            IT IS FURTHER RECOMMENDED that:

19          1.  Defendants' motion for summary judgment and judgment on the pleadings (ECF No.

20    34) be granted with respect to all defendants and all claims;

21          2.  Defendants' request for judicial notice (ECF No. 34-4) be granted;

22          3.  Defendants' motion to dismiss the amended complaint for failing to exhaust

23    administrative remedies (ECF No. 34) be denied without prejudice in light of Albino v. Baca, No.

24    10-55702, 2014 WL 1317141 (9th Cir. Apr. 3, 2014) (en banc);

25          4.  Defendants' motion for judicial notice (ECF No. 34-4) be granted;

26

27    _____
      [6] Defendants did not respond to the court's order directing them to complete and return the form
      indicating either their consent to jurisdiction of the magistrate judge or request for reassignment
28    to a district judge.

                                          17

1    5.  Plaintiff's motion for costs (ECF No. 35) be denied as premature;

2    6.  Plaintiff's motion for a temporary restraining order (ECF No. 40) be denied; and,

3    7.  The instant action be dismissed with prejudice.

4    These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

6  after being served with these findings and recommendations, any party may file written

7  objections with the court and serve a copy on all parties.  Such a document should be captioned

8  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

9  objections shall be served and filed within fourteen days after service of the objections.  The

10  parties are advised that failure to file objections within the specified time may waive the right to

11  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  DATED: June 10, 2014

13

14  ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18